# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2026

Lyle W. Cayce
Clerk

No. 25-40012

Mike Crane, *as next friend* D. J. M.; Lavon Beth Meyer; Lee Allen Meyer, *Individually and as Representative of* the Estate of Lyndon Dean Meyer,

*Plaintiffs—Appellants*,

*versus*

Penske Transportation Management, L.L.C.; Penske Logistics L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:19-CV-94

Before Wiener, Engelhardt, and Oldham, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

This appeal concerns whether a motor carrier that outsourced a shipping job to a second carrier, which then outsourced it to a third carrier, can be held liable for the negligence of the driver hired by the third carrier. The district court held that it could not as a matter of law. We disagree, so we REVERSE.

No. 25-40012

## I.

While on his way to Laredo, Texas, to pick up cargo for Adient US, Satnam Singh Lehal's tractor-trailer jackknifed, crossed into oncoming traffic, and collided with Lyndon Dean Meyer's vehicle, killing Meyer on impact. Adient originally hired Penske Logistics ("Penske") to transport its goods, but Penske neither hired Lehal nor owned the truck he was driving. Instead, as is common in the trucking industry, Penske outsourced the job to another carrier—Liberty Lane—through Penske's affiliate broker, Penske Transportation Management ("PTM"). Liberty Lane then had its affiliate broker hire a third carrier, OK Trans, which supplied the truck and hired Lehal. Plaintiffs, Meyer's surviving child and parents, sued each of these entities, but they have since dismissed their claims against all parties except Penske and PTM.

Plaintiffs assert that Penske is vicariously liable for Lehal's negligence as his statutory employer and that PTM is liable for negligently hiring Liberty Lane to transport the shipment. The district court granted summary judgment for both Defendants, holding that Penske was not Lehal's statutory employer because its shipping arrangement was with Liberty Lane—not OK Trans or Lehal—and that Plaintiffs' negligent-hiring claim against PTM was preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). Plaintiffs appealed.

## II.

We review grants of summary judgment de novo. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

No. 25-40012

## III.

Although Plaintiffs' claims against Penske and PTM sound in state tort law, this appeal turns on applications of federal laws governing the trucking industry. The first issue is whether Penske—the motor carrier originally hired to ship the cargo[1]—is Lehal's statutory employer such that it is vicariously liable for his negligence. The second, whether Plaintiffs' negligent-hiring claim against PTM is preempted. We address these in turn.

## A.

To alleviate some of the problems presented by the temporary leasing of big rigs—such as "abuses and evasions of certificated authority and of safety requirements [and] difficulties in the fixing of the lessee's responsibility," *Transam. Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.*, 423 U.S. 28, 37 (1975)—federal regulations require motor carriers to take "full responsibility for the entire operation of temporarily leased equipment, whether owner-driver, or otherwise," *Simmons v. King*, 478 F.2d 857, 867 (5th Cir. 1973); *see generally* 49 U.S.C. § 14102(a) (authorizing the Secretary of Transportation to require carrier-lessees to "have control of and be responsible for operating" leased equipment). Before a carrier can "perform authorized transportation in equipment it does not own," it must enter a "written lease"[2] with the owner of the equipment granting the carrier "exclusive possession, control, and use of the equipment," as well as "complete responsibility for the operation of the equipment for the duration

---

[1] The district court assumed that Penske was a motor carrier for the purpose of resolving the motion for summary judgment. We do the same.

[2] As used in the regulations, a "lease" is "[a] contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. § 376.2(e).

of the lease." 49 C.F.R. §§ 376.11–12. When a carrier leases equipment from another carrier that "own[s] the equipment or hold[s] it under a lease," the carriers must enter a "written agreement" giving "control and responsibility for the operation of the equipment" to the carrier-lessee. *Id.* § 376.22.

Our court has long recognized that when a carrier enters a written or oral lease for equipment—thereby "assum[ing] exclusive possession, control, and use of the vehicle and responsibility to the public"—it becomes the driver's statutory employer and is therefore "vicariously liable as a matter of law for [the driver's] negligence." *Simmons*, 478 F.2d at 867; *accord Jackson v. O'Shields*, 101 F.3d 1083, 1086, 1089 (5th Cir. 1996) ("[T]he central issue is whether there was a lease . . . for the tractor at the time the accident occurred. . . . [T]he fact that no written lease was in effect at the time of the accident does not foreclose the possibility that an oral lease existed between the parties."); *Hiltgen v. Sumrall*, 47 F.3d 695, 704 (5th Cir. 1995) ("[T]he lease, and the controlling federal regulations, provide the basis for . . . liability . . . ."); *Price v. Westmoreland*, 727 F.2d 494, 496 (5th Cir. 1984) (finding that the carrier was vicariously liable because the lease required that it "assume complete responsibility" (citation modified)); *see also Zamalloa v. Hart*, 31 F.3d 911, 918 (9th Cir. 1994) ("Common carriers are liable as the statutory employers of the drivers from whom they lease trucks during the term of the lease, regardless of whether the lease is written or oral."); *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 13 (1st Cir. 1999) ("The absence of a valid lease precludes imposition of vicarious liability . . . under the 'statutory employment' doctrine . . . ." (citing *Jackson*, 101 F.3d at 1086–87)).

The district court held that Liberty Lane was Lehal's statutory employer because it entered into an agreement with OK Trans to use OK Trans's truck and driver, but it held that Penske was not because there was

no similar agreement between Penske and OK Trans.[3] The court acknowledged, however, that Penske had an agreement with Liberty Lane that required Liberty Lane to transport Adient's goods on Penske's behalf. Since Penske—a carrier—employed Liberty Lane—a carrier that leased the truck at issue from OK Trans—to ship the goods, their arrangement falls under 49 C.F.R. § 376.22, which required Penske to take "control and responsibility for the operation of the equipment." Under our precedent, Penske's assumption of control and responsibility of the vehicle made Penske Lehal's statutory employer, regardless of whether Penske and Liberty Lane complied with the formal regulatory requirements. *See Jackson*, 101 F.3d at 1089; *Price*, 727 F.2d at 496–97; *Simmons*, 478 F.2d at 863 n.14, 867. Plaintiffs can therefore hold Penske vicariously liable if they can establish the other elements of liability. We accordingly reverse.

B.

Plaintiffs also allege that PTM was negligent in hiring Liberty Lane to transport the goods without first investigating its qualifications as a motor carrier. The district court granted summary judgment for PTM, concluding that Plaintiffs' claim was preempted by the FAAAA. *See* 49 U.S.C. § 14501(c)(1). But while this case was on appeal, the Supreme Court ruled that the FAAAA's safety exception to preemption applied to negligent-

---

[3] The district court believed that the controlling question for statutory-employer liability is whether an "arrangement . . . exist[s] between the motor carrier and the owner or driver of the vehicle at issue" and that "no lease—written or oral—is required prior to imposing statutory liability." This accords with some other courts' formulations. *See, e.g.*, *Dewey v. K. Split Logistics LLC*, No. 21 C 3505, 2026 WL 931535, at *1–2 (N.D. Ill. Apr. 7, 2026) ("[T]he lease is not the foundation of statutory employer liability. . . . Any 'arrangement' is sufficient under the statute and its regulations."). But the definition of "lease"—on which we rely—includes an "arrangement," 49 C.F.R. § 376.2(e), so it is unclear that there is any material difference between the district court's formulation and ours.

No. 25-40012

hiring claims against brokers, abrogating the district court's decision. *See Montgomery v. Caribe Transp. II, LLC*, 608 U.S. ___, 146 S. Ct. 1199, 1205 (2026).

PTM nonetheless argues that we should affirm the judgment because PTM did not owe Plaintiffs a duty under Texas law—an issue the district court did not address. But, "as a well-established general rule, this court will not reach the merits of an issue not considered by the district court." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Aus.*, 142 F.4th 819, 828 (5th Cir. 2025) (citation modified). We see no reason to deviate from that rule here.

\*　　\*　　\*

For the foregoing reasons, we REVERSE the judgments in favor of Penske and PTM and REMAND for further proceedings.